[L. A. No. 6086.   Department Two.—May 18, 1920.]

## J. H. TIPPS, Appellant, v. IDA B. LANDERS, Executrix, etc., Respondent.

[1] BOOK ACCOUNT—EVIDENCE—ENTRIES IN BOOK NOT KEPT IN USUAL COURSE OF BUSINESS.—In an action upon an open book account, entries in a book not kept in the usual course of business and not containing all the dealings between plaintiff and defendant are not sufficient to establish the plaintiff's claim.

[2] ID.—ACTION AGAINST EXECUTOR—CORRECTNESS OF ACCOUNT—EVIDENCE—INCOMPETENCY OF PLAINTIFF.—In an action upon an open book account against the executor of an estate, the plaintiff is an incompetent witness to establish the correctness of the account or to testify with reference to any matter of fact occurring before the death of the testator.

APPEAL from a judgment of the Superior Court of Imperial County. W. H. Thomas, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

H. E. Gleason and Conkling & Brown for Appellant.

James W. Glassford and J. J. Simons for Respondent.

WILBUR, J.—This is an action to recover $15,485.47. The complaint is in two counts, each for the above amount, the first upon an "open, mutual and current book account," and the second upon an open, mutual, current account, between the plaintiff and T. R. Landers. Plaintiff appeals from a judgment of nonsuit. Plaintiff testified that he kept a record of the transactions between himself and the deceased; that the entries were made by him at or about the time of the transactions, on pages 62 and 65 of an old book, from which the two pages 63 and 64 had been torn out, the credit entries to the plaintiff being on page 62 and those against the plaintiff on page 65. These pages were admitted in evidence over the objection of the defendant that no proper foundation had been laid for their introduction. These pages are as follows, to wit:

(Page 62)

PAID TO T. R. LANDERS BY CHECK.

On 0

| | | | | |
|---|---|---|---|---|
| Dembe 29 | 1909 | | 1500 | |
| 9/1 | 1910 | | 100 | |
| 11/28 | 1910 | | 2000 | Thurnnar Mag |
| 12/10 | 1910 | | 626 28 | |
| 12–23 | 1910 | | 300 | |
| 6/22 | 1911 | | 5413 58 | Margages |
| 12/20 | 1910 | Check Moners Pd | 1500 | |
| 11/1 | 1911 | | 106 50 | |
| 12/6 | 1911 | Calex | 600 | |
| 4/14 | 1912 | | 1500 | |
| 7/24 | 1912 | | 1200 | El Centro Bank |
| 8/8 | 1912 | | 684 49 | |
| 9/13 | 1912 | | 993 50 | |
| 9/26 | 1912 | | 500 | |
| 1/12 | 1912 | | 600 | |
| 1/9 | 1913 | | 500 | |
| 4/1 | 1913 | | 500 | loned |
| | Durant Mote | | 460 | J. H. Conditt Ione |
| 3/14 | 1914 | - | 50000 | By Lane Mg. Corp. |
| | | | | 24182 55 |

—65—  ACCT. WITH LANDERS.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| July | 1 | 1910 | Note for | $5692.00 | Due | July | 1, | 1915 |
| " | 1 | " | Note for | $5000.00 | Due | " | 1, | 1915 |
| Dec. | 13 | 1911 | " " | $4054.07 | " | " | 1, | 1915 |
| April | 10 | 1914 | hogs | 85 | | $14,746.07 | | |
| | | | | | | 85 | | |

14831.07

The evidence shows that the entries were not a correct record made at the time of the transactions and in the usual

course of business. The last item in the account of $85, dated April 10, 1914, was for eight hogs delivered on January 28, 1914, and was entered in the book on April 10, 1914. The plaintiff paid for these hogs by check on delivery. If the books had been correctly kept, there should be a corresponding entry of this amount in favor of the plaintiff. The last item credited to the plaintiff is fifty thousand dollars, dated March 14, 1914. Plaintiff claims that this item should be five thousand dollars and the date March 31, 1914, and claims only this amount in his bill of particulars. The item of three hundred dollars, December 23, 1910, precedes the item of one thousand five hundred dollars, December 20, 1910, and the item of June 22, 1911, precedes the item of December 20, 1910. The item of December 20, 1910, was thus entered more than six months after the transaction recorded. In proof of the correctness of the account, the promissory note of July 1, 1910, for $5,692 shown in the account was introduced in evidence together with the indorsements thereon. These indorsements were as follows:

"Paid    9– 1–1909            $ 100.00
          11–29–1909             1500.00
                                  100
Paid November 28, 1910      2000.00
Paid 12–10–1910              300.00
Paid 12–23–1910              626.28
Pad   6–22–1915             4526.28
          All Pade June 22, 1911."

A comparison of these payments with the account shows that the item of one hundred dollars paid September 1, 1909, was not entered in the account at all; that the item of one thousand five hundred dollars, paid November 29, 1910, was entered in the account as made December 29, 1910; that the item of three hundred dollars paid December 10, 1910, was entered as made December 23, 1910. The $626.28, paid December 23, 1910, was entered as made December 10, 1910. The indorsement, "Pad 6–22–1915 $4526.28," is claimed by plaintiff to be so much of the item of the account "6–22–1911, 5413.58" as was necessary to complete the payment of the note, the balance of the amount being applied to the five thousand dollar note executed at the same date. There are four difficulties with this explanation. First, the date of the indorsement is 1915 instead of 1911. Second, the sum of all the items, including the item $4,526.28, exceeds by over three thousand dollars the amount due thereon June 22,

1911. Third, the item $4,526.28 is the exact sum of all the previous payments (omitting the undated one hundred dollar item, for which there is no corresponding entry in the account). Fourth, the indorsement, "All Pade June 22, 1911," is a much more appropriate indorsement, if made at the time the note was surrendered, as plaintiff testifies. Plaintiff testified to the transaction of June 22, 1911, in explanation of the item of $5,413.58 in the account, to the effect that this item consisted of a total of the amount of certain chattel mortgages executed to the plaintiff and by him transferred to the defendant in payment upon the notes as follows: "P. E. Patterson, mortgagor, $967.50; T. White, mortgagor, $550; D. M. Kirklin, $526; E. S. McCollum, $1,492.50; Louis Fechin, $355; Louis Fechin, $365; J. H. Stevinson, $1,085." The total would be $5,341. Further, at the foot of page 62 is $24,182.55. It is apparent, therefore, that the entry of fifty thousand dollars is a mistake, and the amount should be five thousand dollars. This, however, does not tend to establish the correctness of the book. Furthermore, it also appears that all of the transactions between the plaintiff and Landers were not recorded in the book, Otis Tipps testifying in relation to the item of eighty-five dollars, when asked if any other hogs were sold under similar transactions, stated that there were such transactions and that he was buying hogs all over the country for different parties, and that his father, the plaintiff and the deceased had extensive business dealings together. [1] The preliminary proof showed that it was not a book kept in the usual course of business, containing all the dealings between the plaintiff and others, nor did it show all the dealings between the plaintiff and T. R. Landers, nor was there sufficient evidence of the correctness of the account. These book entries, therefore, do not rise in probative value above mere memoranda used to refresh the memory of a witness, as they fail in the foregoing essentials as a book of accounts. (*Landis* v. *Turner*, 14 Cal. 573, 576; *Colburn* v. *Parrett*, 27 Cal. App. 541, 544, 545, [150 Pac. 786].) These entries should not be considered of any probative value in determining whether or not there was sufficient proof to establish plaintiff's claim. In discussing the account both parties seem to overlook the interest accruing upon the notes. Even without considering this interest respondent claims that the account shows a

balance due the deceased of $3,885.52, on the theory that moneys shown by the account as paid to the defendant are presumed to be applied to some indebtedness, and that only the items indicated in the *bill of particulars* as having been "loaned," etc., are to be considered as credits in favor of plaintiff. (Code Civ. Proc., sec. 1963, subd. 7.) Appellant contends that even on this theory, the total debits would be $26,575.87, and that "deducting the credits of $14,806.07 leaves a balance due appellant of $11,769.80." If we assume that at the time plaintiff and wife executed the notes of July 1, 1910, their total was the balance due to the payee, as seems reasonable, and credit plaintiff with all subsequent items claimed in his account, the balance would be in favor of T. R. Landers for $647.12, if we include interest. If we accept the testimony of the plaintiff, incompetent as it was, that the balance due the defendant on the notes after the payment of June 22, 1911, was three thousand five hundred dollars and credit him with all the subsequent items, the balance due the plaintiff would be $5,806.53. But this includes the item of March 14, 1914, and in view of the fact that this item was merely a deposit of plaintiff's check by Landers, the check would be presumed to be a payment on an indebtedness due Landers.. (*Light* v. *Stevens,* 159 Cal. 288, [113 Pac. 659].) Ignoring this payment, we would have a balance in favor of the plaintiff of only $806.53. This balance is more than overcome by the fact that no proof other than the account itself was offered as to the items of "November 12, 1912, $600.00," and "January 9, 1913, $500.00"; and these items must therefore be disallowed. It remains to be determined whether there was sufficient evidence other than the so-called account-book to establish a *prima facie* case. In addition to the indorsements upon the notes, it was established that certain checks drawn by plaintiff were deposited by Landers in his bank account. These transactions failed to establish any obligation to repay these amounts by reason of the presumption that money paid by one to another is due the latter. (Code Civ. Proc., subd. 7, sec. 1963; *Light* v. *Stevens, supra.*)

In the foregoing discussion we have mentioned evidence given by the plaintiff as a witness in his own behalf. [2] He was, however, an incompetent witness either to establish the correctness of the account, or to testify with reference

"to any matter or fact occurring before the death of" T. R. Landers. (Code Civ. Proc., sec. 1880, subd. 3.) In *Roche* v. *Ware,* 71 Cal. 375, [60 Am. Rep. 539, 12 Pac. 284], it was stated that plaintiff in an action against an executor could testify with reference to the keeping of books *and their correctness.* This statement as to the right to testify as to the correctness of the book was criticised in the later case of *Stuart* v. *Lord,* 138 Cal. 672, [72 Pac. 142], and shown to be *dicta.* In *Colburn* v. *Parrett, supra,* it was held by the district court of appeals, second district, that in such a case the plaintiff could not testify that the entries were true and correct. . We agree with this decision. An examination of the record satisfies us that the defendant did not waive her objection to the incompetence of the plaintiff as a witness, and that his testimony as to all the items and transactions should be therefore ignored by us in determining whether or not the plaintiff has shown any right of recovery against the defendant. (Code Civ. Proc., sec. 1880, subd. 3.) Omitting the incompetent evidence improperly admitted, the judgment of nonsuit on the general ground of failure of proof was properly granted. (*Carter* v. *Canty,* 181 Cal. 749, [186 Pac. 346].)

In view of the foregoing conclusion it is unnecessary to determine whether the motion for nonsuit upon the ground that the plaintiff's claim was barred by the statute of limitations could be sustained where the bar of the statute is plead by section number only (337), and not by subdivision thereof. (*Wolters* v. *Thomas,* 3 Cal. Unrep. 843, [32 Pac. 565].) It may be observed, however, that the only subdivision of that section which could apply to the plaintiff's cause of action would be subdivision 2. In view of this conclusion it is also unnecessary to consider whether or not the account in question is either a mutual open and current account or a book account within the meaning of that subdivision. Therefore we do not decide that question.

Judgment affirmed.

Lennon, J., and Sloane, J., concurred.